**Greenan v. Ernst**

726

*Maurice J. Coughlin* and *McVay & McVay*, for plaintiff.

*Wolfe & Wolfe*, for defendants.

WELLS, P. J., March 8, 1957.—This proceeding arose from the filing of a complaint by plaintiff seeking the dissolution of a partnership known as Healey Oil Co. which had existed between herself and her brother, William Healey, as an individual and as trustee for their brother, Norman Healey, and asking that an accounting be had of the affairs of the said partnership.

Defendants made answer alleging that the partnership was dissolved in 1928 and accounting made at that time, and further aver that releases of all claims of plaintiff against William J. Healey had been given by plaintiff on September 28, 1934, August 5, 1935, and July 26, 1944, and that the settlement of a suit brought in Erie County, N. Y., between the parties on the same claim rendered plaintiff's present claim res adjudicata and finally that she was barred from recovery by the statute of limitations and by laches.

Interrogatories were filed and at the trial of the matter considerable testimony was presented by both parties.

Upon the pleadings, testimony and exhibits are made the following:

### Findings of Fact

1. Plaintiff, Grace Healey Greenan, is a resident and citizen of the State of New York, residing at 225 East 73rd Street, New York City.

2. Defendant Florence E. Ernst is a resident of the city of Bradford, McKean County, residing at 194

South Avenue, Bradford, and was on October 13, 1950, duly appointed executrix of the estate of William J. Healey.

3. Defendant Manufacturers and Traders Trust Company of Buffalo, N. Y., is a corporation duly incorporated under the laws of the State of New York, with its principal office and place of business at 284 Main Street, Buffalo, N. Y., and was on October 13, 1950, duly appointed executor of the estate of William J. Healey.

4. William J. Healey died testate September 3, 1950, and at the time of his death was a resident of the city of Bradford, County of McKean, and his last will and testament was duly admitted to probate by the Register of Wills of McKean County on September 11, 1950.

5. This action is brought against defendants above named in their capacity as coexecutors of the estate of William J. Healey.

6. By his will, admitted to probate on September 23, 1911, in McKean County, John H. Healey gave one-third of his residuary estate outright to his son, William J. Healey, one-third outright to his daughter, Grace Healey Greenan, and one-third in trust with his son, Norman Healey, as life beneficiary, and William and Grace, or their heirs, as equal remaindermen.

7. This residuary estate included oil and gas properties which John H. Healey had been utilizing in his oil and gas business.

8. The trustees named in the will of John H. Healey for Norman's trust were one Rollin V. Hill, who resigned as such in 1912, and William Healey.

9. In his will, John H. Healey requested that the oil and gas business which he had been conducting be continued after his death.

10. On June 19, 1913, plaintiff individually, William individually, and William as trustee for Norman pooled their interests in the oil and gas properties

which they had received under the will of John H. Healey and formed the Healey Oil Company, a partnership organized to engage in the business of owning, operating, acquiring and dealing in oil and gas properties and producing oil and gas.

11. The properties owned by the partnership at the time of its organization were a gas and oil leasehold of some 80 acres known as Shepard Run, and a gas and oil fee property of 20 acres.

12. The said partnership agreement which was to continue until mutually dissolved gave William, Grace and Norman each a one-third interest; it provided William was to manage the business for the best interest of the parties; to drill new wells on property or property coming into partnership possession as agreed by majority of partners; that William was to sell oil except that Grace Greenan was to sell her proportion of oil produced from original properties; that partners might acquire such other oil and gas property as they may agree upon among themselves to be owned and operated by the Healey Oil Co.; William to receive salary of $60 per month for six months and at that time salary to be readjusted upon an agreed basis.

13. There was no provision in the agreement expressly permitting or prohibiting any of the partners engaging in the oil and gas business on their own account.

14. In 1913, when the partnership was formed, William was about 39 years of age, Norman, 32, and Grace, 24.

15. Norman had no formal schooling and never held a job.

16. Norman was nearly 30 years of age at the time of the execution of his father's will, yet his father left Norman's share of the estate in trust though he gave properties outright to William and to Grace, who was eight years younger than Norman.

17. Norman, in November 1925, wrote a letter to his sister in which he indicated fear that he might be committed to an asylum.

18. While not formally adjudged to be an incompetent, it would appear that Norman was in fact a person lacking in average business experience and ability.

19. In 1915, the 20-acre parcel included in the partnership agreement was transferred to one Charles W. Moore for a consideration of $6,500.

20. About the same time, Moore transferred to William Healey individually the oil and gas property known as the Hunt property for $7,500 consideration. This deed and that referred in finding 19 were recorded on September 17, 1915, in Deed Book 171, records of McKean County.

21. In 1919, William acquired for his own account a one-third interest in an oil and gas parcel known as the Van Scoy property, in 1926 he acquired for his own account the Buchanan property and in 1928 he acquired for his own account the Forty-four property.

22. From 1915 through 1928, the following total amounts were deposited in the following accounts in the Bradford National Bank:

| | |
|---|---|
| William J. Healey | $1,320,730.40 |
| William J. Healey & Co. | 258,260.61 |
| William J. Healey, Personal | 66,575.94 |
| Norman H. Healey | 577.00 |
| Healey Oil Co. | 137,411.66 |

23. From June 19, 1913, through 1928 William credited to Norman $11,700.53, or an average of about $750 a year, as Norman's purported share of partnership profits.

24. Healey Petroleum Corporation was formed on November 30, 1928, and on December 3, 1928, William J. Healey offered all his oil and gas producing properties in McKean County to this new entity, which offer was accepted on that date to the end that a deed dated

December 3, 1928, was prepared conveying all these properties including Shepard Run to Healey Petroleum Corporation in return for which William received 5,000 shares of $100 par value preferred stock of Healey Petroleum Corporation, 10,000 shares of no par common stock of Healey Petroleum Corporation and $965,000 in cash.

25. The minutes of the December 3rd meeting of the board of directors of Healey Petroleum Corporation shows that the directors found that the properties were "reasonably worth the price specified" and accepted the offer.

26. On December 26, 1928, plaintiff signed an instrument transferring her interest in Shepard Run to William.

27. On December 26, 1928, William, without further formality, executed an instrument transferring Norman's interest in Shepard Run from William as trustee to William as an individual.

28. William Healey did not disclose the fact that Healey Petroleum was interested in Shepard Run property at the time plaintiff sold her interest to him.

29. William Healey told plaintiff that sale for $120,-000 was a good thing.

30. The books of account of Healey Petroleum Corporation record under the heading Investments, the five properties which William Healey transferred to the corporation as follows:

| | | |
|---|---|---|
| "A" Hunt | $ | 375,529.90 |
| "B" Buchanan | | 475,069.84 |
| "C" Van Scoy | | 186,739.16 |
| "D" Forty-four | | 118,755.77 |
| "E" Shep Run | | 315,232.83 |
| | | $1,471,327.50 |

31. The aggregate of these investments equals almost exactly the consideration in stock and cash re-

ferred to in William's offer of December 3, 1928, to Healey Petroleum Corporation; the said prices were based upon a valuation made, as of January 3, 1929, by a competent oil and gas property valuation engineer who was then in the employ of Healey Petroleum Corporation; in making the valuation the engineer did not take into account either the costs or results of the development of the properties subsequent to January 3, 1929.

32. In January and February of 1929, William received from Healey Petroleum Corporation for his own account for these properties $966,200 in cash, $500,000 face value of preferred stock of the corporation and 47,940 shares of common stock of the corporation.

33. William Healey paid plaintiff and Norman for their interest in the Shepard Run property the sum of $40,000 each.

34. Plaintiff and Norman received no other proceeds from the sale of the five properties.

35. Part of the $40,000 which William allocated to plaintiff and Norman consisted of 250 units of Healey Petroleum Corporation stock which William, as trustee, purchased for the account of each during 1929.

36. The cash portion of the $40,000 which William allocated to plaintiff as her share of the proceeds of Shepard Run was paid to plaintiff in more or less monthly payments from 1929 to 1933.

37. In 1929, there was deposited in the "William J. Healey" bank account the sum of $1,854,268.20, in the "William J. Healey & Co." account $176,251.04, and in the "William J. Healey Personal" account, $37,000.

38. From 1930 through 1935 William deposited in the "William J. Healey" account the sum of $1,280,-865.55 and in the "William J. Healey, Personal" account the sum of $174,651.08.

39. During 1933, William deposited in the "William J. Healey" account the sum of $88,108.63 and in the "William J. Healey, Personal" account, $24,500.

40. In January 1933, William wrote a letter to plaintiff in which he stated, among other things: "I hope that business moves upward soon or we will all be sunk. I couldn't help you if I had the desire."

41. In June 1933, William wrote a letter to plaintiff in which he stated, among other things: "My income is shut off and I have many obligations and don't know just how I am going to take care of them. I am sending the $25 but hope you realize that it is not easy for me to send even this amount at the present time."

42. During the period 1931-1933, plaintiff sold the 250 units of Healey Petroleum Corporation stock which William had allocated to her as part of her share of the proceeds of the sale of Shepard Run, some of said stock being sold to William, some to a broker and some to Miss Ernst.

43. The preferred stock of Healey Petroleum Corporation which plaintiff sold was $100 par value stock and regularly paid its $7 dividend.

44. The units of stock which Miss Ernst purchased from plaintiff she bought at prices of $90, $80 and $50 per unit.

45. In September 1934, plaintiff, then living in Buffalo, was in financial difficulties; defendant gave plaintiff a check for $150 and settled her outstanding bills by a payment through the Retail Credit Association at $.50 on the dollar.

46. At this time William Healey, through his agent Miss Ernst, secured a receipt and release dated September 28, 1934, which released William Healey from any claim of plaintiff relating to the estate of her father or mother in any oil and gas property in the County of McKean, or in the Healey Petroleum Corporation.

47. Plaintiff late in 1934 began an action against William J. Healey in Erie County, N. Y., averring William Healey had appropriated to himself certain partnership property and seeking an accounting and dissolution of the partnership. William Healey served an answer denying appropriation of partnership property and acquisition on his own behalf of valuable properties including oil and gas leases.

48. Plaintiff signed a stipulation of discontinuance of her law suit, dated August 6, 1935.

49. Plaintiff, on August 6, 1935, signed an agreement providing for the release of William Healey as executor of the estate of his father, mother and as trustee under the will of John H. Healey and as trustee for Norman and to later release Healey Petroleum Corporation, and also providing for the payment to plaintiff by William Healey of $8,500 upon the execution of the agreement and monthly payments in varying amounts for a period of 15 years. No mention is made of the Healey Oil partnership.

50. On August 5, 1935, William Healey executed a general release to plaintiff.

51. On August 31, 1935, William Healey filed in the Orphans' Court of McKean County, a "First and Final Account" of his trusteeship for Norman Healey, dated August 1, 1935, and a petition to resign as trustee, dated August 10, 1935.

52. Plaintiff was never apprised of the filing of the account or of the filing of the petition to resign, either by statutory notice or otherwise.

53. In his petition to resign as trustee, William Healey falsely stated that "the only parties in interest in this proceeding are your Petitioner, as Testamentary Trustee for Norman H. Healey, and the said Norman H. Healey, who joins in this petition", and made no mention of plaintiff, who, as one of the two remaindermen under the trust, was a party in interest.

54. William Healey's "First and Final Account" for Norman was never presented to the court, never advertised and never confirmed nisi or absolute, and William Healey was never discharged as trustee except as implied by appointment of a successor trustee.

55. The said "First and Final Account" for Norman Healey, among other items, credited Norman with $40,000 as proceeds from the sale of Shepard Run lease but did not mention the name of the purchaser of said lease.

56. On November 27, 1935, Producers Bank & Trust Co. was appointed successor trustee for Norman Healey. On May 5, 1944, the said bank filed a first and final account headed, Successor Trustee, Estate of John H. Healey, deceased, which was confirmed absolute by the Orphans' Court of McKean County on July 5, 1944.

57. Grace Healey Greenan received a copy of the Producers Bank account and executed a receipt for the same, setting forth assets distributed to her but which did not include any interest in Healey Oil Company or any other partnership assets.

58. In August 1938, plaintiff requested William Healey to anticipate the due date of future payments under the agreement of August 6, 1935; this was done, so that the final payment under the said agreement was made to plaintiff in 1944 instead of in 1950 as originally scheduled.

59. William Healey discounted the advance payments; a $2,400 payment was discounted to $1,700, a $1,200 payment was discounted to $732, and another $1,200 payment was discounted to $744.

60. On July 21, 1944, William Healey's attorney wrote a letter to plaintiff enclosing the final payment under the agreement of August 6, 1935, and enclosing a paper for plaintiff to sign "in connection therewith".

61. Plaintiff and daughters signed a release on July 26, 1944, acknowledging William Healey's performance under the agreement of August 5, 1935.

62. The first intimation which plaintiff received that William Healey's sworn denials in his answer in the 1935 lawsuit of dealings on his own account were possibly untrue occurred in the fall of 1948 when a newspaper clipping was brought to plaintiff's attention identifying William Healey as the principal stockholder in Healey Petroleum Corporation at the time of the sale of the corporation's stock for $5,340,000.

63. Plaintiff's contacts with William Healey and his family were so limited during the 37-year period 1913-1950 that William's daughter, Mary, was not acquainted with plaintiff or her daughters during that time, and plaintiff never met Mr. Nash, who was William's personal attorney, the attorney for William Healey as trustee for Norman, the attorney for the partnership and one of the attorneys for Healey Petroleum Corporation.

64. In April or May of 1949, William Healey suffered a heart attack while in California and did not return to New York until the fall of 1949.

65. In December 1949, William Healey and plaintiff's daughter, Marjorie, met in Florida and William Healey told Marjorie in substance he was going to give plaintiff an accounting as soon as he recovered his health.

66. In May 1950, William Healey came to New York for treatment and there were meetings between plaintiff and her daughters and William Healey.

67. In June 1950, William Healey told plaintiff's daughter, Marjorie, he was going to take care of her mother's business and account with her.

68. On or about June 19, 1950, Miss Ernst in the course of a telephone conversation with plaintiff's daughter, Ellie, informed her that plaintiff and daugh-

ter were not to get in touch with William Healey again.

69. Plaintiff and daughters never saw William Healey after June 19, 1950.

70. Shortly after this time, plaintiff sought legal advice as to her partnership affairs from Winthrop, Stimson, Putnam & Roberts, who advised her of their inability to represent her because of conflicting interest.

71. Plaintiff then retained her present counsel who filed suit in June 1951.

72. William Healey was admitted to Memorial Hospital in August 1950, and died there on September 3, 1950, at the age of 76.

73. None of the facts as to William Healey's appropriation of partnership assets and opportunities were known to plaintiff at the time she commenced the present lawsuit.

## Discussion

The case at issue presents many interesting questions. One theory of the issues involved would show the picture of plaintiff as a wasteful and extravagant person who lived beyond her income and financial means and continually sought financial aid from her wealthy brother; that the said brother not only paid her the share in the partnership assets to which she was entitled but further gave her funds from time to time; that she accepted these payments and gave releases to her brother and finally brought suit against him and further sums were paid to her. And finally, she is again seeking further funds from his estate. Such a picture would not engender much sympathy in any court.

Another picture would be that of the inexperienced mother and housewife who put complete trust in her brother and who left management of her affairs to him in the confidence he would protect her interests and those of their brother who was unable to properly man-

age his own business affairs; that she accepted such payments as were given her as her proper share and was grateful to her brother for his aid to her and her daughters.

This court, unfortunately, does not possess the power of looking into the heart of plaintiff to divine her true intentions but can only examine the evidence presented in this case, make such findings of fact as appear justified and apply our laws to these findings.

Is plaintiff's claim only that of a person seeking a final amount from the estate of a millionaire brother, or that of a defrauded sister who justly merits proper accounting?

It appears to this court that the key to the question may be found in the Shepard Run transaction. Here is a situation in which William Healey induced his sister to sign over her interest to him individually for a price of $40,000 on the averment that the sale at that price was a good thing, while in the same month of December 1928, the directors of the newly formed Healey Petroleum Corporation found the properties sold to them including Shepard Run were reasonably worth the price which from the investment account of the corporation indicated it to be over $315,000. The fact that William Healey, as trustee for Norman, conveyed that interest in Shepard Run to himself individually without approval of any court is especially significant. Effort has been made to show that the $315,000 valuation was made at a later date but defendant's own witnesses agree that no development costs after January 3, 1929, are taken into account in making their valuation. For a brother to encourage his sister to sell such a property at that price clearly indicated to this court his intent to defraud his sister and brother.

In view of the Shepard Run transaction, the earlier transfer of the other partnership property to one

Moore in what appears to be a wash sale becomes significant.

It may well be that William Healey felt annoyed by the frequent requests of his brother and sister for money and by the fact that they contributed nothing in the way of management or business or financial assistance in the operation of the partnership but there seems to be no justification for a man, who in the years 1930 through 1935, deposited nearly one and one-half million dollars in his bank account, and in 1933 alone, the sum of over $200,000 to write plaintiff that he couldn't help her if he had the desire, that it was not easy to send her $25. Such letters tended to conceal the true financial picture from plaintiff.

It may be of no merit in determining this issue but for Miss Ernst and Mr. Healey to purchase Healey Petroleum Corporation preferred stock from plaintiff for prices so low as $50 per share when it was on a regular $7 dividend basis seems a callous disregard of her rights and welfare.

It is well established that the partners owe to each other a duty of loyalty and in this case you have the additional relationship of trustee for the brother, Norman, and that of brother and sister.

A partner cannot engage in business of the same nature as that of the partnership without the consent of his copartners unless otherwise provided by the partnership agreement and must account for any profits made while so engaged. See Bast's Appeal, 70 Pa. 301; Goldstein Co. v. Greenberg, Inc., 352 Pa. 259.

This court does not believe the law of partnership is any different in the Bradford Field area than elsewhere in Pennsylvania; nor was it established that there was a custom in that field allowing partners to deal on their own.

Defendant contends that the partnership was terminated in 1928 with the sale of the partnership property

but no writing purporting to dissolve the partnership was offered in evidence.

Plaintiff remains confronted by her releases given to William Healey. First, it might be argued that for William Healey to secure releases from his sister was unusual in dealings between a brother and sister, particularly one given in 1934 for a payment of $150 and certain of plaintiff's bills which were no particular concern of William Healey. If one believes that plaintiff was not aware of William Healey's self dealing, and this court so finds, then his failure to disclose such material facts involved in giving the releases constitutes fraud and will avoid them. He had a duty of full disclosure to plaintiff and his brother.

Defendant further contends that plaintiff was barred by the statute of limitations and by laches. We believe these claims to be without merit. It would appear that there was active concealment by William Healey of his dealings, and further there was a relation of trust and confidence between them imposing a duty on William Healey to disclose all the material facts and circumstances and their legal rights.

Plaintiff's claim as a remainderman of the trust for Norman rests on similar findings, with the obligation of William Healey as trustee for Norman being particularly binding. Court approval of William Healey's account as trustee was never secured even if fraud were not shown.

The chancellor draws the following conclusions of law:

1. Even partners in a partnership composed of experienced businessmen occupy a fiduciary relation towards each other and owe to each other the duty of the finest loyalty; not honesty alone, but the punctilio of an honor the most sensitive is the standard of behavior to which the law holds them.

2. There is an implied duty, without any stipulation on the subject in a partnership agreement, that every partner shall abstain from converting partnership opportunities to his personal advantage.

3. A partner who claims exemption from this duty has the burden of showing such exemption.

4. A partner has no right to appropriate and use for his own account partnership assets and income.

5. Only by clear and express consent that his copartner may engage in dealing on his own account can a partner be held to have given up his right to share in the profits of his copartner's self dealings in the field of business of the partnership.

6. The partnership agreement of June 19, 1913, does not permit of any construction granting William Healey the right to deal for his own account in the oil and gas business.

7. Under the partnership agreement and applicable principles of partnership, trust and fiduciary law, William Healey had no right to exploit for his own advantage, whether with partnership funds or credit or otherwise, opportunities which he came upon in the oil and gas business.

8. Any properties or profits acquired by William Healey by dealings on his own account in the oil and gas business from 1913 until his death were in law partnership properties and profits.

9. All oil and gas properties and profits acquired by William Healey in dealing on his own account were held by him as trustee ex maleficio for the partnership.

10. Once a partnership is established, the presumption is that it continues.

11. Since even defendants concede that the partnership existed from 1913 through 1928, the presumption is that it continued to exist after 1928.

12. To rebut the presumption that the partnership continued to exist after 1928 defendants must show

affirmatively that the partnership was dissolved and a final account rendered, with full and complete disclosure and free from fraud.

13. One cannot cast aside a fiduciary relationship by devious or ambiguous procedures; he must bring home, clearly and definitely, to those who are relying upon his position of trust that the relationship is at an end.

14. The defense based on an alleged dissolution and final accounting in 1928 is without merit. There was no legally effective dissolution or final accounting in 1928-1929. What occurred at that time was that William Healey committed a fraud on plaintiff and Norman by transferring five partnership properties to Healey Petroleum Corporation without making a full and fair disclosure of the facts of the transaction to plaintiff and Norman or obtaining their consent thereto or accounting to them for their full shares of the profits.

15. William Healey at the time he transferred the five partnership properties to Healey Petroleum Corporation in 1928 failed to fulfill his legal duty of disclosing to plaintiff and Norman the facts of the transaction.

16. Because of the high position of trust which he occupied towards plaintiff William Healey could not lawfully have acquired her interest in Shepard Run in 1928 without making a full and fair disclosure of the facts of the Healey Petroleum Corporation transaction and explaining to plaintiff her legal rights relative thereto.

17. William Healey defrauded plaintiff and Norman in 1915 when he transferred one of the initial partnership assets to Moore and contemporaneously therewith, and for approximately the same consideration, received the Hunt property from Moore in his own name.

18. William Healey defrauded plaintiff and Norman in 1928 when he failed to fulfill his legal duty of disclosing to them the facts concerning his acquistion of partnership properties on his own account and his transfer of said properties to Healey Petroleum Corporation.

19. William Healey defrauded plaintiff in 1928 when he informed her that Shepard Run was running dry.

20. William Healey defrauded plaintiff and Norman when he sold Shepard Run to Healey Petroleum Corporation for $315,000 in 1929 and paid a total of some $40,000 in cash and stock to each of them for their respective one-third interests in that property.

21. William Healey defrauded plaintiff and Norman when he failed to pay over to them any of the proceeds of the sale of Hunt, VanScoy, Buchanan and Fortyfour to Healey Petroleum Corporation in 1929.

22. A legally effective dissolution of a partnership can never be achieved when fraud and fraudulent concealment is practiced.

23. Releases signed by plaintiff will not relieve William Healey from claim of plaintiff because of his failure to disclose material facts and his fraudulent dealings.

24. The lawsuit commenced in the Supreme Court of New York, Erie County, in 1935 by plaintiff and thereafter discontinued is not res adjudicata. The lawsuit was never under the applicable New York law, terminated on the merits, and the arrangement pursuant to which it was terminated was induced by William Healey's sworn denials in his answer of his prior fraudulent self-dealings.

25. The stipulation of discontinuance terminating the 1935 lawsuit is not effective as a release or settlement of liability.

26. Defenses of laches and statutes of limitation will not prevail because William Healey acknowledged his partnership obligations in 1949 and 1950, and further William Healey never disclosed material facts to plaintiff.

27. The first disclosure by William Healey or on his behalf that fulfilled his legal obligation to make a full disclosure to his partners of his dealings on his own account in the oil and gas business was made in the course of the discovery proceeding which was conducted pursuant to this court's order of October 21, 1954.

28. William Healey's first and final account of his trusteeship for his brother, Norman, is not a bar to Norman's recovery as it was not in compliance with the law.

29. The mere fact that Norman signed his name to a paper, prepared by William Healey or his counsel, joining in William's 1935 petition to the orphans' court to resign as trustee was not, in view of Norman's mental limitations, William's concealment of his dealings on his account, and William's failure to inform Norman of his rights in the premises, a ratification of William Healey's misappropriations.

30. In order for a beneficiary to ratify the misfeasances of a trustee, the trustee must fully explain to the beneficiary the facts of the misfeasances and the beneficiary's rights relative thereto.

31. The account filed by the Producers Bank & Trust Co. only embraced assets which William Healey turned over to the bank, and would not estop recovery for Norman of his share of partnership assets.

32. A trustee cannot purchase the interest of his beneficiary without making full disclosure even in cases where the beneficiary is fully competent to evaluate the facts presented to him.

33. The only way in which William Healey could lawfully have terminated Norman's interest in the Healey Oil Company in 1928 or thereafter would have been with court approval, after a full disclosure of the facts.

34. William Healey's execution of a deed from himself as trustee for Norman to himself as an individual under the circumstances was improper.

35. William Healey's obligations as managing partner of the Healey Oil Company were never effectively terminated during his lifetime.

36. William Healey's obligations as express trustee for Norman were never effectively terminated during his lifetime.

37. Every oil and gas transaction or operation in the Bradford Field in which William Healey engaged from June 19, 1913, until September 3, 1950, the date of his death, was in law a partnership transaction or operation.

*Order*

And now, March 8, 1957, this cause having been heard on bill, answer and proofs, it is ordered, adjudged and decreed, as follows:

1. Defendants are ordered to make accounting to plaintiff for her partnership share in the oil and gas operations in which William Healey was engaged in the Bradford Field. Such accounting is not to include oil and gas properties located outside of this area.

2. Defendants are ordered to make accounting to plaintiff for her share as remainderman in Norman Healey's partnership share in such operations.

3. The costs of these proceedings shall be paid by defendants.

The prothonotary is directed to enter this decree nisi and give notice thereof to the parties or their

counsel of record and unless exceptions are filed within 20 days thereafter the decree nisi shall become the final decree, as of course.

*Opinion Pursuant to Rule 43*

WELLS, P. J., February 28, 1958.—Defendants in the above case have given notice to this court that appeal has been taken to the Supreme Court from the final decree and seek additional reasons for the findings of the chancellor.

It is the thought of this court that a decree which made some 74 findings of fact and 37 conclusions of law covered the decision of the court and that any contentions to the contrary were thus denied. We do not believe it is the duty of the court to specifically affirm or deny all such requests but that where averments of either party are inconsistent with the court's findings and conclusions of law, they are thus denied or held to be immaterial to the issue.

Perhaps this court having come to the conclusion that William Healey had defrauded his sister and brother and should account to them, dismissed defendants arguments as to the releases too peremptorily but equity seeks to do equity and if fraud did exist, should defendants escape the accounting because of the technical defenses?

Defendants complain of certain matters dealing with the 1935 and 1944 releases.

There may be a fraudulent and wrongful concealment of the facts involved in the giving of a release as well as a misrepresentation, and a false suggestion or suppression of truth affords a sufficient ground to set aside a release.

William Healey failed to disclose to plaintiff, his sister and partner, his dealings in oil and gas from 1913 to 1928, the facts concerning the value of Shepard Run and the transfer of the partnership properties.

Where a duty to disclose or a confidential relation exists between the parties, silence as to material facts involved in the giving of a release constitutes fraud and will avoid the release, and this is true where non-disclosure is equivalent to an actual falsehood and where concealment so colors the statement made as to produce a misleading and false impression in regard to a material fact which would be as vicious as an express falsehood. We believe William Healey's failure to disclose the true facts was such concealment as to set aside the release.

Defendants correctly state that the "two witness" rule applies when one seeks to overthrow a written instrument. We feel however, that the testimony of plaintiff and evidence as to the circumstances surrounding all of the dealings between these parties meets this test. We believe this evidence amounts to "corroborating circumstances equivalent to the testimony of another witness."

Defendants further aver that the court improperly excluded the testimony of Franklin Brown concerning conversation between himself and Mr. Raichle, representing Mrs. Greenan at that time. This court felt that for Mr. Brown to tell of conversations between them in the absence of plaintiff would be improper, there being no showing she was aware of what the conservations were or in any way confirmed them.

As to what the agreement of 1935 provided, is part of the issue the chancellor has endeavored to resolve and Mr. Brown's conclusions might be interesting but not necessarily governing.

Defendants also contend that plaintiff must return or tender back consideration for the 1935 release. It appears to us that a rule compelling the return would in effect bar plaintiff and litigants like her from any chance to have an accounting regardless of the merits of their case. All of the evidence points to the insecure

financial condition of plaintiff and it would be extremely unlikely if she was able to retain the sum paid in 1935. She had no other funds to maintain herself and it is not practical to believe she would be able to make such an offer at the time the suit was brought. There is a distinction between cases seeking to set aside a conveyance of real estate, or the sale of a business, and the present case in which plaintiff seeks an accounting which may find defendants owing her additional sums.

As to the claim that plaintiff is barred by laches and the statute of limitations, we believe that she is not so barred. We have no quarrel with defendants' statement that independent affirmative acts of concealment are necessary to excuse plaintiff's delay in bringing the action, but we feel that when William Healey in 1933 wrote his sister it was not easy for him to send her $25 and that he couldn't help her if he had the desire, he falsely concealed the true facts as to his circumstances furthering the concealment and misrepresentation. We believe these acts coupled with others shown excuse the delay.

As to the final complaint that the court failed to make specific answer to defendants' exceptions, this court specifically refused to find the findings requested by defendants. Pennsylvania Rule of Civil Procedure 1519 (*b*) states in part: "An exception which avers a failure to make substantial disposition of a request for a finding of fact must be answered specifically . . . by refusing so to find . . ." This was done.

Holding these views, the chancellor reaffirms the findings of facts and conclusions of law previously determined, and the accompanying decree.